USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-22-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TRUSTEES OF THE NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS PENSION FUND,
WELFARE FUND, ANNUITY FUND,
APPRENTICESHIP, JOURNEYMAN RETRAINING
EDUCATIONAL AND INDUSTRY FUND, CHARITY
FUND, and THE NEW YORK CITY AND VICINITY
CARPENTERS LABOR-MANAGEMENT
CORPORATION,

                                      Plaintiffs,

                      -v-

METROPOLITAN ENTERPRISES, INC. a/k/a
METROPOLITAN ENTERPRISES NY and SHAI
SELLAM,

                                      Defendants.

------------------------------------------------------------X

16 Civ. 284 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Charity Fund, and the New York City and Vicinity Carpenters Labor-Management Corporation (collectively, the "Funds" or "plaintiffs") bring this action pursuant to Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, seeking to recover allegedly delinquent contributions to a group of employee benefit plans. Plaintiffs allege that defendant Metropolitan Enterprises, Inc. a/k/a Metropolitan Enterprises NY ("Metropolitan") failed to timely pay certain required contributions to the Funds

in accordance with ERISA and the relevant collective bargaining agreement ("CBA"). Plaintiffs also allege that defendant Shai Sellam breached his fiduciary duties to the Funds.

Metropolitan does not move to dismiss. Sellam, however, does so as to the fiduciary duty claim against him, under Federal Rule of Civil Procedure 12(b)(6). He argues that, by the terms of an earlier settlement agreement, plaintiffs waived their right to proceed against him, and that the Amended Complaint fails to state a claim for breach of fiduciary duty. For the following reasons, Sellam's motion is denied.

## I.   Background

### A.   Factual Background[1]

The relevant factual background is in two parts. The first relates to plaintiffs' claims against Metropolitan for delinquent payments and Sellam for breach of fiduciary duty. The second relates to an earlier lawsuit involving the same parties, and the settlement agreement resolving that action.

#### 1.   Present Claims

Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. AC ¶¶ 4–6. Metropolitan is a corporation incorporated under the laws of New York, which was bound by a CBA to make

---

[1] The facts related herein are drawn from the Amended Complaint. Dkt. 27 ("AC"). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "[O]n a motion to dismiss, a court may [also] consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (alterations, internal quotation marks, and citation omitted). The Court has also considered the settlement agreement from a prior lawsuit, which the Amended Complaint incorporates by reference. *See* Dkt. 29 ("Biggs Decl."), Ex. A ("Settlement Agreement").

certain contributions to the Funds for work performed in the trade and geographical jurisdiction of the New York City District Council of Carpenters.  *Id.* ¶¶ 7, 9–11.  The CBA also bound Metropolitan to the terms of the Funds' Trust Agreement and Collection policy, which provides that the Funds' assets include not only money that employers have actually contributed to the Funds, but also delinquent amounts that employers were required to contribute to the Funds.  *Id.* ¶ 12.  Under the collection policy, Metropolitan's contributions are due seven calendar days after the end of each pay period.  *Id.* ¶ 13.

In December 2015, the Funds completed an audit of Metropolitan's books and records for the period March 25, 2013 to May 17, 2015.  It revealed that, for that period, Metropolitan failed to remit contributions to the funds in the principal amount of $386,241.96.  *Id.* ¶¶ 17, 26–29.  Critically, this deficiency of $386,241.96 revealed in December 2015 was not covered by the parties' earlier (June 2015) settlement agreement discussed below.  *Id.* ¶ 30.

Plaintiffs allege that Sellam is "the de facto owner and operator of Metropolitan," and was, at all relevant times, a fiduciary of the Funds within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).  *Id.* ¶ 8.  Specifically, Plaintiffs allege that Sellam "exercised operational control of some or all of Metropolitan's assets including discretionary control of bank accounts, contracts, equipment, and other assets," and "was responsible for deciding whether to use assets in the possession of Metropolitan to pay contributions to the Funds."  *Id.* ¶¶ 33–34.  Plaintiffs allege that "Sellam decided not to use such assets to pay contributions to the Funds," and instead "took a substantial salary for himself," and, after October 2015, "transferred Metropolitan's assets including projects, equipment, manpower, and operations to other entities" "for his personal gain" and "to avoid Metropolitan's obligations to the Funds."  *Id.* ¶¶ 31–34; *see id.* ¶ 25; *see also id.* ¶¶ 51–52.

## 2.     The Earlier Action and the June 2015 Settlement Agreement

In March 2015, the Funds filed an action (the "2015 Action") against Metropolitan for delinquent contributions for the period August 17, 2014 to March 1, 2015, and against Sellam for breach of fiduciary duty.  *Id.* ¶¶ 14–15.  During the 2015 Action, the Court ordered and the Funds commenced an audit of Metropolitan's books and records for the period covering March 25, 2013 to May 17, 2015—the audit described above which was completed in December 2015.  *Id.* ¶¶ 16–17.  In June 2015, before the audit was complete, the Funds, Metropolitan, and a third-party surety reached and executed a settlement agreement (the "Settlement Agreement") to resolve the 2015 Action.  *Id.* ¶¶ 18–19.

Under the Settlement Agreement, Metropolitan agreed to pay $941,034.96 to compensate the Funds for its failure to remit contributions to the Funds for work performed from March 28, 2011 through March 24, 2013 (a period not covered by the then-pending audit) and August 17, 2014 through April 8, 2015 (a period within that covered by the audit).  It did not cover the periods March 25, 2013 to August 16, 2014, or April 9, 2015 to May 17, 2015 (which were covered by the then-pending audit).  *Id.* ¶¶ 20–21.[2]  On August 28, 2015, the parties dismissed the 2015 Action.  *Id.* ¶ 24.  In October 2015, Metropolitan fulfilled its obligations pursuant to the Settlement Agreement.  *Id.* ¶ 25.

Three provisions of the Settlement Agreement are relevant here in determining whether the Funds' present action against Sellam has been waived.  Paragraph 13 pertains to the dismissal of the claims against Sellam:

> The Funds agree to dismiss without prejudice the claims against Shai Sellam in his personal capacity.  In the event any default [by Metropolitan in making payments specified in the Settlement Agreement] is not cured in accordance with the terms

---

[2] Sellam disputes the Amended Complaint's characterization of what time periods were covered by the Settlement Agreement.  *See infra* note 4.

4

of paragraph 8 hereof, the Funds may renew their claims against Sellam in his personal capacity.

Settlement Agreement ¶ 13.

Paragraph 16 pertains to a reservation of rights against Metropolitan:

This Settlement Agreement does not constitute a waiver of any rights or claims held by the Funds against Metropolitan for any amounts determined to be owed by Metropolitan as a result of the audit of the books and records of Metropolitan that is in progress and that are not included in the Settlement Amount. The Funds expressly reserve the right to pursue recovery of any outstanding amounts found by such audit that are not included in the Settlement Agreement, including but not limited to interest, liquidated damages, and fees and costs. Metropolitan reserves the right to challenge or otherwise oppose the claims asserted by or in connection with such audit or otherwise.

*Id.* ¶ 16.

Paragraph 19 pertains to a release executed with respect to a company which issued bonds for certain projects enumerated in the Settlement Agreement. It provides that "[t]ogether with the execution of this Settlement Agreement, the Funds shall execute a Release . . . in favor of Platte River . . . , which shall be delivered to Platte River and held in escrow by Platte River pending notice of the Funds receipt of the payment" from a specified source of funds. *Id.* ¶ 19.

### B. Procedural History

On January 14, 2016, the Funds filed the original complaint. Dkt. 1. On February 19, 2016, Metropolitan filed an answer. Dkt. 13. On February 23, 2016, Sellam moved to dismiss the claims against him, Dkt. 17, along with a memorandum of law, Dkt. 19 ("Sellam Br."), and a declaration of his counsel with exhibits attached. Dkt. 18. On April 15, 2016, the Funds filed the Amended Complaint. Dkt. 27.

On, May 2, 2016, Sellam submitted a letter stating that he was relying on Sellam's previously filed motion to dismiss. Dkt. 28 ("Sellam Ltr."). On May 12, 2016, plaintiffs submitted a memorandum of law in opposition to the motion to dismiss, Dkt. 30 ("Funds Br."),

and a declaration of their counsel with exhibits attached, Dkt. 29.  On May 19, 2016, Sellam filed a reply.  Dkt. 31 ("Sellam Reply Br.").[3]

## II.     Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)).  However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).  A complaint is properly dismissed where, as a matter of

---

[3] Although the letter indicated that "Defendants" (plural) intended to rely on the previously filed motion to dismiss, the reply brief was filed only on behalf of Sellam.  Regardless, it is clear that the motion to dismiss challenges only the causes of action brought against Sellam in his personal capacity.

law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### III. Discussion

Sellam argues that the Amended Complaint should be dismissed for two reasons: first, because the Funds waived their right to bring claims against him in the 2015 Settlement Agreement, and second, because the Amended Complaint fails to state a claim for breach of fiduciary duty. The Court addresses these in turn.

#### A. Waiver

The Settlement Agreement does not waive the Funds' claims against Sellam.

"It is well settled that '[a] waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.'" *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 499 (S.D.N.Y. 2005) (quoting *Civil Serv. Emps. Ass'n, Inc., Local 1000, AFSCME, AFL–CIO v. Kinsella*, 599 N.Y.S.2d 671, 673 (3d Dep't 1993)). "To support a finding of waiver, [a] Defendant[] must show that Plaintiffs had a clear, unmistakable, and unambiguous intent to relinquish their legal rights." *Silverman v. Miranda*, 116 F. Supp. 3d 289, 303 (S.D.N.Y. 2015); *see also RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737 (VM), 2008 WL 5416379, at *7 (S.D.N.Y. Dec. 17, 2008). The burden of showing waiver falls on the party claiming it. *NYTDA, Inc. v. City of New York*, No. 11 Civ. 1836 (NGG), 2014 WL 4274219, at *6 (E.D.N.Y. Aug. 28, 2014) (citing *E. 56th Plaza, Inc. v. Abrams*, 458 N.Y.S.2d 953, 955 (3d Dep't 1983)).

Although ERISA claims can be waived, courts give such waivers "closer scrutiny." *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 231 (2d Cir. 1995) ("The validity of a waiver of pension benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." (emphasis omitted)); *see also Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension*

*Plan*, 935 F.2d 1360, 1365 (2d Cir. 1991) (ERISA's legislative history and substantive provisions "show that Congress intended 'to protect contractually defined benefits'" (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)). "When courts have found waivers to bar ERISA claims, the language of the waiver was all-inclusive and unambiguous." *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 314 (D. Conn. 2008), *aff'd*, 348 F. App'x 627 (2d Cir. 2009), *vacated and remanded on other grounds*, 563 U.S. 421 (2011).

The terms of the Settlement Agreement fall far short of evincing a clear, unmistakable, and unambiguous intent on the part of the Funds to waive their ERISA breach of fiduciary duty claims against Sellam. Nor would one expect them to be: The Funds' present claims relate to alleged delinquencies that were uncovered by the audit that was still in progress at the time (June 2015) the parties entered into the Settlement Agreement and which was not completed until December 2015. The present claims do not involve the same delinquencies that were the subject of the Settlement Agreement—under which Metropolitan fully paid its obligations. *See* AC ¶¶ 25–30.[4]

---

[4] The alleged delinquencies at issue here overlap in part with the time period covered by the Settlement Agreement. The parties dispute how much of a chronological overlap exists. The Settlement Agreement provides that the settlement sum consists of "delinquent contributions, for work performed through April 8, 2015." Settlement Agreement ¶ 1. The Amended Complaint alleges that the Settlement Agreement does not cover March 25, 2013 to August 16, 2014 or April 9, 2015 to May 17, 2015, AC ¶¶ 20–21, while Sellam argues that the March 25, 2013 to August 16, 2014 period is included in the Settlement Agreement's language "through April 8, 2015, " Sellam Reply Br. 2–3. The Court notes that the Amended Complaint's allegation that the Settlement Agreement did not cover March 25, 2013 to August 16, 2014 may be due to the fact that the delinquencies alleged in the 2015 Action were for the period beginning August 17, 2014. AC ¶¶ 14–15. Notwithstanding the chronological overlaps, because the Court finds that the Settlement Agreement did not waive claims against Sellam, and because the Amended Complaint alleges that the delinquent payments in the present action (which form the basis for the breach of fiduciary claim) are ones not covered by the Settlement Agreement, there is no occasion to resolve this dispute at this time.

Sellam's primary arguments are that the Settlement Agreement resolved "all" claims brought in the 2015 Action, and that paragraph 13 provides that the only situation in which the Funds could later bring claims against him was if Metropolitan failed to fulfill its obligations under the agreement. Sellam Ltr. at 2; Sellam Reply Br. 1, 6–7. Those arguments misread the agreement.

To the extent that Sellam relies on the fact that the Settlement Agreement resolved "all" claims, this fact is not dispositive. The pertinent question is, of course, the terms on which the Settlement Agreement resolved them. Indeed, the Settlement Agreement's opening paragraph states that "the claims of the Funds in the [2015 Action] are settled *upon the following terms and conditions*: . . . ." Settlement Agreement at 1 (emphasis added).

As to those terms, Sellam primarily relies on paragraph 13 of that agreement. It states:

> The Funds agree to dismiss without prejudice the claims against Shai Sellam in his personal capacity. In the event any default [by Metropolitan in making payments specified in the Settlement Agreement] is not cured in accordance with the terms of paragraph 8 hereof, the Funds may renew their claims against Sellam in his personal capacity.

*Id.* ¶ 13. Sellam construes paragraph 13 to mean he can *only* be sued again if Metropolitan defaults. But that paragraph falls far short of effecting a clear, unmistakable, and unambiguous waiver as to claims against Sellam for breaches of his fiduciary duty as a result of delinquent payments as-yet undiscovered and which were not the subject of the allegations in the 2015 Action. Two aspects of that paragraph point against waiver. The first-sentence clause "without prejudice" connotes that the dismissal does not impede the ability of the Funds to bring claims against Sellam. *See* Black's Law Dictionary (10th ed. 2014) (a "dismissal without prejudice" is one "that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period"); *id.* ("Without prejudice" means "[w]ithout loss of any rights; in a way that does not harm or cancel the legal rights or privileges of a party."). And the second-sentence statement

9

that "in the event of" a default the Funds may renew their claims is significant, too, for what it does not say. It does not say that the Funds may move against Sellam "*only* in the event of" a default.[5] The paragraph falls short of conclusively barring the Funds, absent a default, from bringing claims against Sellam with respect to later-revealed deficiencies. *See Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 702 n.20 (2d Cir. 1980) (describing the logical "fallacy of denying the antecedent").[6]

Separately, in claiming waiver, Sellam relies on paragraphs 16 and 19 of the Settlement Agreement. He contends that paragraph 16's express reservation of the ability to bring claims against Metropolitan based on the results of the audit implies a waiver by the Funds of (*i.e.*, a failure to reserve the right to bring) claims against him under the principle *inclusio unius est exclusio alterius* (the inclusion of one implies the exclusion of the other). Sellam Br. 7–8; Sellam Reply Br. 5–6. And, he argues, the release in paragraph 19 of the claims against Metropolitan's surety upon satisfaction of the Settlement Agreement carries a similar negative implication: If the surety would be released only in the event of payment, so, too, the claims against him can only be reinstated in the event of default. Sellam Reply Br. 6.

This argument is unpersuasive. As to paragraph 16, the Settlement Agreement required Metropolitan to pay for delinquent contributions and deficiencies for certain periods, and reserved the Funds' ability to pursue claims against Metropolitan based on the results of the

---

[5] The statement "only if a default occurs may the Funds sue Sellam" is the logical equivalent of the statement "if no default occurs, then the Funds may not sue Sellam."

[6] To be sure, the agreement is no model of clarity. As Sellam notes, if the dismissal without prejudice left the Funds with absolute discretion to renew claims against him, then the second sentence of paragraph 13 appears redundant. Sellam Reply Br. 5–6 (citing principle that contract should be read to give effect to all provisions). But because the second sentence of the paragraph does not unambiguously close off the Funds' right to proceed against Sellam, it is insufficient to constitute a waiver. *Silverman*, 116 F. Supp. 3d at 303.

pending audit. *See* Settlement Agreement ¶¶ 1, 16. That express reservation of rights against Metropolitan for delinquent contributions does not imply, let alone clearly establish, that the Funds waived their separate breach of fiduciary duty claims against Sellam. Similarly, the terms governing the release of Metropolitan's surety do not clearly address the extent to which the Funds did, or did not, intentionally forego their legal rights to pursue Sellam for breaching his fiduciary duty with respect to deficiencies uncovered in the future. And as to Sellam, the only paragraph in the Settlement Agreement dealing with the claims against him provides for a dismissal *without prejudice*. Under these circumstances, Sellam's inferential arguments from the overall structure of the Settlement Agreement fall far short of reflecting a clear, unmistakable, and unambiguous intent to waive future claims against him related to delinquencies beyond those for which the Funds were made whole by the Settlement Agreement.[7]

Therefore, the Court holds, Sellam has not established that the Funds waived their ability to bring their breach of fiduciary duty claims against him.

### B. Breach of Fiduciary Duty

Sellam separately argues that the Funds failed to state a claim for breach of fiduciary duty because the Amended Complaint does not allege sufficient facts to support the allegation that Sellam was a fiduciary. *See* Sellam Br. 12–14; Sellam Reply Br. 9–10. That argument, too, falls short.

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty,

---

[7] Sellam also argues that his bid for dismissal on these grounds ought not be subject to the "closer scrutiny" due waivers under ERISA because the Settlement Agreement involved a "release" of known claims, not a "waiver" of future ones. Sellam Reply Br. 7. The Court need not resolve this argument, because, even without "closer scrutiny," the Settlement Agreement does not reveal a clear, unmistakable, and unambiguous intent to waive (or release) the Funds' present claims against Sellam.

and thereby caused a loss to the plan at issue." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a); *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)).  Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A).[8]  The definition of fiduciary under ERISA is "to be broadly construed." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987).  "Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (internal quotation marks and citation omitted).

The Funds here have alleged sufficient facts to support that Sellam was a fiduciary under ERISA.  Although the Court need not credit allegations that merely recite the legal conclusion that Sellam "was a fiduciary," AC ¶¶ 8, 53, the Amended Complaint goes beyond that.  It alleges that Sellam "is/was the de facto owner and operator of Metropolitan," and that he "exercised operational control of some or all of Metropolitan's assets including discretionary control of bank accounts, contracts, equipment, and other assets." *Id.* ¶¶ 8, 33.  And, it alleges, Sellam "was responsible for deciding whether to use assets in the possession of Metropolitan to pay contributions to the Funds," and indeed, "decided not to use such assets to pay contributions to the Funds," instead taking "a substantial salary for himself and transferr[ing] Metropolitan's

---

[8] Although the parties initially disputed what constituted plan assets and the implications for the breach of fiduciary duty claims, Sellam Br. 13–14, Sellam now acknowledges that, as alleged in the Amended Complaint, plan assets were defined in the relevant agreements to include delinquent fund contributions.  *See* Sellam Reply Br. 1 n.2; *see also* AC ¶¶ 12–13, 49.

assets including projects, equipment, manpower, and operations to other entities." *Id.* ¶ 34; *see also id.* ¶ 31 (allegations of transfers of Metropolitan's assets to avoid obligations to the Funds).

These factual allegations describe Sellam's power (1) to exercise, and his actual exercise of, discretionary control over various Metropolitan assets, and (2) to determine, and his actual determination of, whether to use Metropolitan's assets for the payment of its obligations to the funds. Accepting these allegations as true, as the Court must on a motion to dismiss, they are sufficient to plausibly allege that Sellam was a fiduciary. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) (allegation that entity "exercised discretionary authority and control with respect to the administration of the Fund and the management and disposition of the Fund's assets" was sufficient on motion to dismiss to allege entity was fiduciary).

Numerous courts have held similar allegations sufficient to survive a motion to dismiss on breach of fiduciary duty claims. *See, e.g.*, *Romita v. Anchor Tank Lines, LLC*, No. 11 Civ. 9641 (DAB), 2014 WL 1092867 (S.D.N.Y. Mar. 17, 2014) ("Plaintiffs allege that Individual Defendants . . . had the authority to direct money from the [employers'] various accounts including choosing whether [employer] would make the mandatory contributions to the Fund or, alternatively, pay other corporate obligations. This alleged discretion on the part of Individual Defendants, if true, is a hallmark of authority over plan assets and constitutes a plausible allegation that Individual Defendants were fiduciaries within the meaning of ERISA." (internal citations and footnote omitted)); *Bernhard v. Cent. Parking Sys. of N.Y., Inc.*, 282 F.R.D. 284, 289 (E.D.N.Y. 2012) (allegation that individual "was a person with discretion and/or authority to pay contributions to [the funds] on behalf of [the company]" and "thus caused [the company] not to pay the [amount owed]" "would be sufficient to survive a motion to dismiss" (internal quotation marks omitted)); *Trustees of the Plumbers Local Union No. 1 Welfare Fund v.*

*Manhattan Plumbing Corp.*, No. 08 Civ. 3036, 2010 WL 456870, at *2 (E.D.N.Y. Feb. 3, 2010) (fiduciary element satisfied when individual alleged to have "exercised operational control of [the company]," "was responsible for deciding whether to pay benefit contributions to the [benefit] Funds," and "caused the defendant [company] to use [the] withheld assets for purposes other than making contributions to the [benefit] Funds" (second to last alteration in original)); *Keir v. UnumProvident Corp.*, No. 02 Civ. 8781 (DLC), 2003 WL 2004422, at *3 (S.D.N.Y. Apr. 29, 2003) ("The plaintiffs have alleged that [the corporate officer] exercised discretionary control over the management of the plans and that he personally breached this fiduciary duty. This allegation is sufficient to survive the motion to dismiss.").[9]

The cases on which Sellam relies are inapposite. In *Finkel v. Romanowicz*, the Second Circuit affirmed a holding that plaintiff did not sufficiently allege a defendant was a fiduciary. 577 F.3d 79, 86 (2d Cir. 2009). But there, the plaintiff alleged merely that the defendant was an officer of the company who exercised control over general assets and failed to give money over to the relevant funds; plaintiff did not allege that the defendant selected investments or

---

[9] The cases Sellam cites for his argument that more factual allegations are "necessary" do not carry the day. While there were additional allegations or evidence in these cases of a defendant's exercises of authority, these cases did not hold that without the added allegations, a claim for relief would not be stated. *See* Sellam Br. 11–12; Sellam Reply Br. 9–10 & n.11 (citing *Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10 Civ. 1371 (KBF), 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012) (holding on summary judgment that defendant was fiduciary based, *inter alia*, on his testimony that he made all payment decisions on behalf of company); *Trustees of the Sheet Metalworkers Int'l Ass'n Local No. 38 Vacation Fund v. Hopwood*, No. 09 Civ. 5088 (ER), 2012 WL 4462048, at *7–8 (S.D.N.Y. Sept. 27, 2012) (holding on summary judgment that defendant was fiduciary where evidence showed, *inter alia*, that he was personally involved in making decisions about paying corporate bills and submitting fringe benefit contribution forms); *Sullivan v. M.A.C. Design Corp.*, No. 14 Civ. 1846 (NGG), 2015 WL 5518456, at *4 (E.D.N.Y. Sept. 17, 2015) (allegations sufficient for establishing officer was a fiduciary where it was alleged, *inter alia*, that he exercised authority or control concerning the management or disposition of plan assets)).

exchanged one instrument for another, or that he was responsible for determining which creditors would be paid or in what order. *Id.* In *LoPresti v. Terwilliger*, the Second Circuit affirmed a bench-trial ruling that a defendant who commingled plan assets with general assets and used plan assets to pay creditors rather than forward them to the funds was a fiduciary, but that another who had "no responsibility for determining which of the company's creditors would be paid or in what order" was not because he did not exercise authority or control regarding the disposition of plan assets. 126 F.3d at 40 (internal quotation marks, citation, and emphasis omitted). These cases are easily distinguished, because the Funds here allege that Sellam possessed the authority to determine whether to use corporate assets to pay the Funds, and that he used that authority to divert assets to avoid obligations to the Funds.

In addition, *Coleman v. BMC Construction Corp.*, 425 F. Supp. 2d 477 (S.D.N.Y. 2006), on which Sellam also relies, does not support his arguments. The district court there denied *plaintiff's* motion for summary judgment as to the alleged fiduciary's individual liability because the facts were disputed as to his control over company funds. *Id.* at 479, 483–84. *Coleman*, if anything, undermines Sellam's motion to dismiss the claims against him, in that it highlights that determinations as to fiduciary status are fact-intensive.

Therefore, the Funds' Amended Complaint sufficiently pleads that Sellam was a fiduciary under ERISA.[10] After discovery, Sellam will be at liberty to argue that the facts do not support such a finding.

---

[10] Sellam does not contest the Funds' pleadings as to the other elements of the claim: breach and loss. These are adequately pled. *See* AC ¶¶ 47–59.

## CONCLUSION

For the foregoing reasons, Sellam's motion to dismiss the claim against him is denied. The Clerk of Court is respectfully directed to close the motion pending at docket number 17.

The Court hereby directs the parties to confer, and to file on ECF a joint letter and proposed case management plan and scheduling order by two weeks from the date of this opinion.[11] The Court is mindful that the parties have previously indicated that they would be in a better position to reach a resolution of this case once the motion to dismiss was resolved. The Court strongly encourages counsel to undertake settlement discussions promptly, in the hope that this matter can be efficiently resolved before the parties are compelled to incur additional litigation costs.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 22, 2016
       New York, New York

---

[11] In their joint letter, the parties are also directed to recommend a deadline by which Metropolitan and Sellam shall answer the Amended Complaint.